**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| SUSAN HARRIMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ASSOCIATED INDUSTRIES INSURANCE ) <br> COMPANY, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | No. 2:18-cv-2750-DCN <br><br> **ORDER** |

The following matter is before the court on defendant Associated Industries Insurance Company, Inc.'s ("Associated Industries") motion to dismiss the amended complaint, ECF No. 17. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

Plaintiff Susan Harriman ("Harriman") brought this insurance coverage action against Associated Industries to obtain a defense in two lawsuits in Texas. During the relevant time period, Harriman was a Registered Representative and Investment Advisor with IMS Securities, Inc. ("IMS"). She was insured under IMS's professional liability insurance policy that was issued by Associated Industries and valid from July 15, 2015 to July 15, 2016 ("the Policy"). The Policy also incorporates IMS's previous insurance policy through an endorsement. That policy was issued by Endurance Specialty Insurance Co. ("the Endurance Policy"). The parties agree that the language of these two policies is largely the same, other than the inclusion of "Personal and Advertising Injury" as a "Wrongful Act" in the Endurance Policy, which is discussed in more detail below.

In 2015, Harriman was sued in the United States District Court for the Western District of Texas by Palmaz Scientific ("Palmaz"), a medical technology company ("federal underlying suit"). Palmaz alleged, among other things, that Harriman made false and defamatory statements about Palmaz in her capacity as an IMS Registered Representative and Investment Advisor. The federal suit was dismissed on jurisdictional grounds. Then Harriman sued Palmaz in Texas state court, where Palmaz filed counterclaims against Harriman containing the same allegations as the federal underlying suit ("state underlying counterclaim") (together with the federal underlying suit, "the underlying suits").

Harriman alleges that because the underlying suits stem from Harriman's actions in her capacity as a Registered Representative and Investment Advisor with IMS, Associated Industries has the duty to defend Harriman in the underlying suits pursuant to the Policy. However, Associated Industries has refused to do so. As a result, Harriman filed the instant case on October 9, 2018. Her amended complaint, now the operative complaint, alleges: (1) breach of contract for Associated Industries's failure to defend Harriman; (2) bad faith for Associated Industries's refusal to defend Harriman; and (3) that Harriman is entitled to a declaratory judgment declaring that Associated Industries owes Harriman a duty to defend and indemnify[1] the underlying suits. Associated Industries filed a motion to dismiss the amended complaint for failure to state a claim on January 2, 2019. ECF No. 17. Harriman responded on January 23, 2019, ECF No. 21,

---

[1] Despite this reference to indemnification in the amended complaint, counsel for Harriman clarified at the hearing on the motion that this dispute is solely about the duty to defend. ECF No. 24, Tr. 11:10–11.

and Associated Industries replied on February 1, 2019, ECF No. 22. The court held a hearing on the motion on February 7, 2019. The motion is now ripe for review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

### A. Choice of Law

As an initial matter, neither party raised the issue of whether Texas or South Carolina law applies here, despite the fact that all of the relevant conduct occurred in Texas. The Policy does not contain a choice-of-law provision, and the parties cited to South Carolina law in their pleadings. At the hearing, counsel for Associated Industries first argued that South Carolina law applies but then said he was not sure whether choice-of-law principles would require the court to apply South Carolina or Texas law. ECF No. 24, Tr. 9:5–7, 10:11–15. Harriman's counsel argued that South Carolina law applies. Tr. 10:20–24. The parties subsequently stipulated that South Carolina law applies to the issues raised in Associated Industries's motion to dismiss. ECF No. 25. Because "[p]arties can within broad limits stipulate the substantive law to be applied to their dispute," Mellon Inv'r Servs., LLC v. Longwood Country Garden Centers, Inc., 263 F. App'x 277, 281 (4th Cir. 2008), the court will apply South Carolina law.

### B. Motion to Dismiss

Associated Industries argues that Harriman's amended complaint must be dismissed because Harriman's alleged conduct in the underlying suits is not covered by the Policy, meaning that Associated Industries has no duty to defend Harriman. "Pursuant to South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint." Union Ins. Co. v. Soleil Grp., Inc., 465 F. Supp. 2d 567, 572 (D.S.C. 2006). "[T]he complaint is construed liberally, with all doubts resolved in favor of the insured." Id. "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." Isle of Palms

Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1994) (emphasis added). "However, an insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." B.L.G. Enterprises, Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). Here, the causes of action in the underlying suits are tortious interference with existing contracts, tortious interference with prospective and continuing business relations, defamation, and business disparagement. Palmaz alleges that in late 2012, Harriman met with the CEO of Palmaz to offer her services as an IMS agent, which the CEO declined. Harriman allegedly tried to solicit Palmaz's business several other times, which the CEO declined each time. As a result, Palmaz alleges, Harriman began a smear campaign against Palmaz by making false statements to Palmaz's investors and potential investors in order to damage Palmaz's reputation and disrupt its funding and research operations.

To determine if Associated Industries has a duty to defend the underlying suits, the court must examine the language of the Policy and the Endurance Policy. "An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (S.C. 2008). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co., 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003)). "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." Id. (citing Schulmeyer, 579 S.E.2d at 134). "However, an

insurance contract which is 'in any respect ambiguous or capable of two meanings must be construed in favor of the insured.'" Id. (quoting Reynolds v. Wabash Life Ins. Co., 161 S.E.2d 168, 169 (S.C. 1968)).

Pursuant to the terms of the Policy, Associated Industries has a duty to defend any claim against its insured to which the Policy applies. ECF No. 15-3 at 15. This duty to defend stems from the occurrence of a "Wrongful Act," which is defined in the Policy as

> any actual or alleged negligent act, error, omission, misstatement, misrepresentation or breach of duty by an Insured, or by any person other than an Insured for whose actions the Insured is legally responsible, in rendering or in failing to render **Professional Services**[2] for clients of the Broker/Dealer.

Id. at 18. The Endurance Policy adds "Personal and Advertising Injury" as an example of a Wrongful Act. ECF No. 15-4 at 30, 32. The Policy defines "Professional Services" as:

> 1. the sale and/or servicing of Securities approved by and processed or approved for processing by the Broker/Dealer; 2. the sale and/or servicing of life, health, annuity, accident and disability products, but only with respect to Registered Representatives who are duly licensed to do so and only with respect to products that have been approved by the Broker/Dealer; 3. the administration of individual retirement accounts, Keogh retirement plans, qualified 401(K) plans, and employee benefit plans (other than multiple employer or multiple employee welfare arrangements) but only with respect to Securities approved by the Broker/Dealer; 4. **Investment Advisory Services** but solely to the extent that such services are rendered by a Registered Investment Adviser affiliated with the Broker/Dealer; 5. solely in connection with the activities or services described in 1 - 4 above, financial planning and advice; 6. Professional Supervision.

ECF No. 15-3 at 17. "Investment Advisory Services" are defined as

> advisory services provided by a Registered Investment Adviser pursuant to the Investment Advisors Act of 1940 with respect to Securities approved by and processed or approved for processing by the Broker/Dealer, provided that, prior to providing such services, the Registered Investment Adviser

---

[2] When the Policy language includes a term of art that is subsequently defined in the Policy and is relevant to the issues here, the word will be in bold.

gave written notice of such services to the Broker/Dealer and received written approval from the Broker/Dealer to conduct such services.

ECF No. 15-3 at 16–17.

Taking these provisions together, Associated Industries argues that it is not obligated to defend Harriman in the underlying suits because the conduct alleged in the underlying suits does not constitute a Wrongful Act. Specifically, it argues that (1) a client relationship between Palmaz and IMS is necessary to establish a Wrongful Act, and there was no client relationship between the two; (2) there are no allegations in the underlying suits that Harriman performed or failed to perform Professional Services, a necessary condition of a Wrongful Act; and (3) the conduct alleged in the underlying suits does not fall within the Personal and Advertising Injury subsection of the definition of a Wrongful Act. The court disagrees and finds that the allegations in the underlying suits create the possibility of coverage under the Policy, which invokes Associated Industries's duty to defend.

### a. Whether a Client Relationship is Required

Associated Industries first argues that Harriman is not entitled to a defense under the Policy because she did not have a client relationship with Palmaz. A Wrongful Act, which triggers Associated Industries's duty to defend, is defined as "any actual or alleged negligent act . . . by an Insured . . . in rendering or in failing to render Professional Services for <u>clients</u> of the Broker/Dealer." ECF No. 15-3 at 18 (emphasis added). The language of the Policy clearly requires that for conduct to qualify as a Wrongful Act, it must be in the context of a client relationship. Moreover, it is undisputed that Palmaz was never Harriman's client. However, Associated Industries fails to consider whether the allegations in the underlying suits relate to Harriman's relationship with other clients.

7

At the hearing, Harriman pointed to several allegations in the underlying state counterclaim that raise the possibility of Harriman's alleged conduct arising in the context of her relationships with her clients. The underlying state counterclaim alleges generally that Harriman "was making false, defamatory, and disparaging statements about [the CEO of Palmaz], Palmaz Scientific, and Dr. Palmaz to [Palmaz]'s current and potential investors and business partners." Underlying State Counterclaim ¶ 34. The underlying state counterclaim provides several examples of people to whom Harriman allegedly made these defamatory statements. See, e.g., id. ¶¶ 35, 40, 43, 45. While it appears that none of the specific examples provided in the underlying state counterclaim were IMS clients, the broad language of "[Palmaz]'s current and potential investors and business partners" could encompass IMS clients. Moreover, the underlying state counterclaim alleges that "Harriman's tortious conduct . . . occurred while she was acting in the course and scope of, and in her capacity as, agent for IMS." Id. ¶ 123. This also creates the possibility that Harriman made allegedly defamatory comments to IMS clients because she was working within the scope of her role as an IMS agent. Finally, the underlying state counterclaim alleges that "Harriman's goal was to benefit <u>her own clients</u> and her own economic agenda" and that "Harriman . . . purposefully targeted, and continue to target, an audience . . . with whom [she has] . . . a business relationship." Id. ¶ 73 (emphasis added). These allegations suggest that Harriman was making allegedly defamatory statements to her clients. The complaint in the underlying federal suit contains similar allegations. See Underlying Federal Suit Complaint ¶ 14 ("Harriman specifically targeted her false statements at [Palmaz]'s investors, potential investors, potential business partners and individuals who Harriman knew were already in business

relationships with Palmaz."); id. ¶ 52 ("Harriman had contacted [Palmaz investors], as well as other parties, and have made the same false and defamatory statements."); id. ¶ 63 ("Harriman purposefully targeted an audience known to her to have established or potential business relationships with [Palmaz], and with whom she has . . . a business relationship.").

Construing the allegations in the underlying suits liberally, Harriman's alleged conduct could have been committed in the context of Harriman's client relationships, meaning the conduct possibly falls within the definition of Wrongful Act. Therefore, the fact that Palmaz was not a client of Harriman's does not affect whether Associated Industries is obligated to provide a defense to Harriman in the underlying suits.

### b. Whether Conduct Alleged in Underlying Suits Arose from "Professional Services"

Associated Industries next argues that Harriman's actions alleged in the underlying suits were not Professional Services, meaning they could not constitute a Wrongful Act. The Policy generally defines Professional Services as (1) the sale of certain financial products and securities; (2) the administration of certain retirement accounts; (3) the provision of Investment Advisory Services; and (4) professional supervision. Associated Industries argues that a "delusional and malicious campaign of economic terrorism" does not fall within one of these Professional Services. ECF No. 17-1 at 17 (citing Underlying State Counterclaim ¶ 2); see also Underlying Federal Suit Complaint ¶ 3.

Associated Industries again construes the allegations in the underlying suits too narrowly. The underlying state counterclaim alleges that "Harriman's tortious conduct, as described herein, occurred while she was acting in the course and scope of, and in her

9

capacity as, agent for IMS." Underlying State Counterclaim ¶ 123. If Harriman was acting within the scope of her role as an IMS agent, then there is a possibility that Harriman was providing Professional Services. While the underlying federal suit complaint does not contain a similar allegation regarding Harriman acting in the scope of her role as an IMS agent, both of the underlying suits contain allegations, as discussed above, that suggest that Harriman made allegedly defamatory comments to her clients. See, e.g., Underlying State Counterclaim ¶ 73; Underlying Federal Suit Complaint ¶ 63. In doing so, it is possible that Harriman was providing Professional Services to her clients. Therefore, the allegations in the underlying suits create a possibility that Harriman's conduct constitutes a Wrongful Act, invoking Associated Industries's duty to defend Harriman. See Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d at 319.

Associated Industries further argues that Harriman's alleged conduct could not fall within the definition of Investment Advisory Services, as Harriman argues that it could, because under the Policy, those services only relate to securities that have been approved by IMS. The Policy defines Investment Advisory Services as "advisory services provided . . . with respect to Securities approved by . . . [IMS]." ECF No. 15-3 at 16. Here, Associated Industries contends, Palmaz refused to allow Harriman and IMS to sell its private offerings; therefore, the investment at issue was not a security approved by IMS, and any advice related to it would not qualify as Professional Services. However, Associated Industries assumes that Harriman's alleged conduct must have occurred when providing advice about Palmaz securities. But there is a possibility that Harriman made the allegedly defamatory statements while providing advisory services

for other IMS-approved securities. The allegations in the underlying suits do not provide exact detail on when each of Harriman's allegedly defamatory statements occurred or in what context. Instead, the underlying suits generally allege that "Harriman's goal was to benefit her own clients and her own economic agenda" and that "Harriman . . . purposefully targeted, and continue[s] to target, an audience . . . with whom [she has] . . . a business relationship." Underlying State Counterclaim ¶ 73; id. ¶ 75; see also Underlying Federal Suit Complaint ¶ 63 ("Harriman purposefully targeted an audience known to her to have established or potential business relationships with [Palmaz], and with whom she has . . . a business relationship."). Construing the allegations liberally and resolving any doubts in favor of Harriman, there is a possibility that Harriman's alleged conduct occurred while she was providing advisory services for approved securities. Because the court finds that Harriman's alleged conduct could have occurred in the context of providing Professional Services, it need not consider whether Harriman's alleged conduct could also fall within the definition of a Personal and Advertising Injury.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 17, 2019
Charleston, South Carolina**