IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SUSAN HARRIMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ASSOCIATED INDUSTRIES INSURANCE ) <br> COMPANY, INC., ) <br> ) <br> Defendant. ) <br> _____) | No. 2:18-cv-02750-DCN <br><br> **ORDER** |

The following matter is before the court on plaintiff Susan Harriman's ("Harriman") motion to compel, ECF No. 48. For the reasons set forth below, the court denies the motion without prejudice.

**I.  BACKGROUND**

Harriman brought this insurance coverage action against defendant Associated Industries Insurance Company, Inc. ("Associated Industries") related to two lawsuits in Texas. During the relevant time period, Harriman was a Registered Representative and Investment Advisor with IMS Securities, Inc. ("IMS"). She was insured under IMS's professional liability insurance policy that was issued by Associated Industries and valid from July 15, 2015 to July 15, 2016 ("the Policy"). The Policy also incorporates IMS's previous insurance policy through an endorsement. That policy was issued by Endurance Specialty Insurance Co. ("the Endurance Policy"). The parties agree that the language of these two policies is largely the same, other than the inclusion of "Personal and Advertising Injury" as a "Wrongful Act" in the Endurance Policy.

1

In 2015, Harriman was sued in the United States District Court for the Western District of Texas by Palmaz Scientific ("Palmaz"), a medical technology company ("federal underlying suit"). Palmaz alleged, among other things, that Harriman made false and defamatory statements about Palmaz in her capacity as an IMS Registered Representative and Investment Advisor. The federal suit was dismissed on jurisdictional grounds. Then Harriman sued Palmaz in Texas state court, where Palmaz filed counterclaims against Harriman containing the same allegations as the federal underlying suit ("state underlying counterclaim") (together with the federal underlying suit, "the underlying suits").

Harriman alleges that because the underlying suits stem from Harriman's actions in her capacity as a Registered Representative and Investment Advisor with IMS, Associated Industries has the duty to defend Harriman in the underlying suits pursuant to the Policy. However, Associated Industries has refused to do so. As a result, Harriman filed the instant case on October 9, 2018. Her amended complaint, now the operative complaint, alleges: (1) breach of contract for Associated Industries's failure to defend Harriman; (2) bad faith for Associated Industries's refusal to defend Harriman; and (3) that Harriman is entitled to a declaratory judgment declaring that Associated Industries owes Harriman a duty to defend and indemnify the underlying suits.

In her motion, Harriman points out various problems that have occurred throughout discovery, some of which are related to the legal issues raised in her motion and some which are not. The court only reviews the facts relevant to the legal issue raised by Harriman—attorney-client privilege. On May 30, 2019, Harriman served interrogatories and requests for production. ECF No. 48-1. Associated Industries

responded on July 8 and July 12, 2019 and sent its production of documents on a disk, which Harriman received on July 16. ECF No. 48-2. At the time, Associated Industries did not produce a privilege log. After reviewing the production, Harriman reached out to Associated Industries regarding her concerns that certain documents had not been included in the production and that certain answers to Harriman's interrogatories were insufficient. Her concerns with the document production included: (1) a lack of inclusion of communications between Harriman and Associated Industries; (2) a lack of claim notes; and (3) a lack of communication with Associated Industries's counsel prior to Associated Industries's denial of Harriman's claim. Associated Industries said that it would look into the issues raised and address them. ECF No. 48-4.

On November 5, 2019, Associated Industries supplemented its production and produced a privilege log. ECF No. 48-7. In doing so, Associated Industries did not explain why the documents in its supplemental production were not originally produced and claimed privilege on all documents generated after August 28, 2017. Harriman again raised concerns about the production on November 19, 2019, ECF No. 48-8, and Associated Industries responded to Harriman's concerns. ECF No. 48-9.

Shortly thereafter, Associated Industries retained new counsel. After allowing counsel time to familiarize itself with the case, Harriman reached out again on January 8, 2020 to outline various outstanding discovery issues. ECF No. 48-10. Harriman filed a motion to compel on February 27, 2020. ECF No. 48. Associated Industries responded to the motion on March 12, 2020, ECF No. 51, and Harriman replied on April 9, 2020, ECF No. 52. The court entered a text order asking Harriman to clarify the specific categories of documents that she is asking to be produced and the specific discovery

3

requests to which those documents relate, neither of which were clear in Harriman's motion. ECF No. 53. Harriman filed her response on April 22, 2020. ECF No. 54. The court held a telephonic hearing on the motion on May 19, 2020. The motion is now ripe for review.

## II. DISCUSSION

The court first addresses which documents Harriman is asking to be produced. In her motion, Harriman generally asks the court to compel Associated Industries to produce communications between Associated Industries and Associated Industries's outside counsel, Mr. Spadafora. ECF No. 48 at 6. Outside counsel evaluated Harriman's claims and provided advice on whether they were covered by the Policy. Harriman then mentions another attorney who evaluated Harriman's claims, Phil King. Id. at 9.[1] However, later in her motion in a table chronicling the discovery timeline, Harriman states that she is seeking Associated Industries's complete claim file, including facts upon which outside counsel based its opinion, unredacted draft opinion letters from outside counsel, and outside counsel billing records. Id. at 13. Harriman argues that this information is not protected by attorney-client privilege because Associated Industries waived the privilege in two manners: (1) by relying on advice from outside counsel in denying coverage; and (2) by failing to produce a timely privilege log. Harriman also argues that several categories of documents over which Associated Industries claims privilege are not privileged. Harriman did not identify the discovery requests to which these documents are responsive.

---

[1] At the hearing on the motion and for the first time, Harriman's counsel referred to another attorney, Mr. Rogers.

4

Given this lack of clarity, the court entered a text order directing Harriman to identify which categories of documents she asks to be produced and to which discovery requests those documents relate. In her response to the court's text order, Harriman asks the court to issue an order directing Associated Industries to produce: (1) complete claim files for both claims in this case, along with an affidavit or certification that the files are complete; (2) all correspondence with outside counsel, including the facts that were provided to outside counsel and copies of outside counsels' files regarding the coverage decisions; and (3) billing records from outside counsel to verify the complete production of documents. ECF No. 54. Harriman states that these documents are responsive to her Request for Production No. 7 and her Request for Production No. 13. Request for Production No. 7 asks for:

> Your entire claims files on Plaintiff's claim described in Complaint, (including the cover folder) maintained in any of your offices or the offices of any of your agents, together with any and all documents relating to Plaintiff's claim for benefits, including but not limited to: any and all correspondence between you, your agents and attorneys and Plaintiff, his/her agents and attorneys concerning Plaintiff's claim for benefits, all telephone messages to you or from you, or any of your agents, servants or employees on your behalf and any and all correspondence between the Defendant or any of its agents and any other party, including but not limited to AmTrust, AmWins, Wortham Agency or Texas Department of Insurance, concerning the claim(s) described in Plaintiff's Complaint; any investigation reports, inter-office memoranda, or inter-department memoranda relating to the Plaintiff, his/her claim for benefits, or to your decision not to pay this claim for benefits.

ECF No. 48-1 at 13. Request for Production No. 13 asks for "[a]ny other file, including but not limited to claims files, on the Plaintiff or his/her claim for benefits maintained by you in any other office if not included in the documents described above, including the file folders themselves." Id. at 14.

At the outset, the court notes that Harriman's motion to compel only contains arguments about waiver of privilege. Therefore, while she asks for the production of the complete claims files, the only parts of those files for which she provides a substantive argument are those that have been withheld as privileged. Moreover, Harriman requests for the first time in response to the court's text order an affidavit or certification that the claims files are complete. The purpose of Harriman's response to the text order was to clarify which documents were the subject of Harriman's motion, not to add new requests. As such, with regard for Harriman's first request, the court will only consider whether any documents within the claims files that have been withheld as privileged must be produced.

As for correspondence with outside counsel, Harriman never requested all correspondence with outside counsel in the requests for production at issue here.[2] Instead, she requested all documents related to Harriman's claim, which could include correspondence with outside counsel about Harriman's claim. Therefore, the court will only consider whether correspondence with outside counsel regarding Harriman's claim that has been withheld as privileged must be produced. As for copies of outside counsels' files regarding their coverage decisions, those are encompassed in Harriman's request for any and all documents related to Harriman's claim that are held by Associated Industries's agents, meaning the court will consider whether they may be withheld on the basis of attorney-client privilege.

---

[2] It is the court's understanding that Harriman has issued additional requests for production; however, those requests are not the subject of the instant motion.

Harriman's final request is for outside counsel's billing records so that Harriman may verify the complete production of documents. Harriman mentions billing records in her motion, but she explains for the first time in her response to the court's text order that their purpose is to verify the complete production of documents. To the extent that outside counsel's billing records reflect work done on Harriman's claim, they could relate to Harriman's request for "any and all documents relating to [Harriman]'s claim for benefits." ECF No. 48-1 at 13. However, Associated Industries argues that the billing records are privileged and protected work product. While Harriman argues that privilege was waived, she does not provide any argument as to why billing records are not protected work product.[3] As such, the court denies the motion to compel as to billing records. The court now turns to Harriman's arguments as to why Associated Industries has waived attorney-client privilege.

### A. Privilege Waiver Through Reliance on Counsel's Advice for Coverage Denial

Harriman first argues Associated Industries waived any attorney-client privilege over communications with outside counsel because Associated Industries "delegated the initial coverage evaluation" to outside counsel and denied coverage in reliance on his

---

[3] Harriman's counsel argued for the first time at the hearing on the motion that the documents at issue here are not protected work product. In Harriman's motion, she only mentions work product twice. First, she simply notes that Associated Industries's privilege log asserts work product protection over all communications from August 2017 to February 2018 between Associated Industries and its coverage counsel. ECF No. 48 at 10. She then argues at the end of motion that "[t]here is no attorney client or work product privilege in this bad faith cause because [Associated Industries] delegated the coverage decision to outside counsel and is deemed to have waived the privilege." Id. at 13. However, any waiver under In re Mt. Hawley only applies to attorney-client privilege, not to protected work product. Harriman makes no mention of work product in her reply brief. Given the absence of argument on work-product protection in Harriman's briefs, the court declines to consider the issue now.

advice. ECF No. 48 at 6. Harriman contends that In re Mt. Hawley, 829 S.E.2d 707 (S.C. 2019), applies here because Associated Industries claims that it made a reasonable investigation into Harriman's claims and denied Harriman's claims in good faith but uses privilege to prevent Harriman from discovering what Associated Industries learned during its investigation. Harriman explains that outside counsel issued the original denial letter but that Associated Industries has not produced any communications asking outside counsel to conduct a review of Harriman's claims or any files from outside counsel's office that may have been used to make the coverage determination. As such, Harriman argues that Associated Industries is attempting to use privilege as a shield while simultaneously asserting that its investigation was reasonable and in good faith, which In re Mt. Hawley forbids. Harriman also argues that she has made a prima facie showing of bad faith, as required by In re Mt. Hawley.

In response to this argument, Associated Industries argues that the "at issue" waiver discussed in In re Mt. Hawley is inapplicable here because it has not placed its communications with counsel at issue such that waiver exists. Instead, Associated Industries argues, it engaged in the standard practice of seeking the opinion of coverage counsel regarding policy interpretation, which does not waive privilege. Associated Industries also argues that any documents for which privilege would be waived have already been produced, and that Harriman has failed to demonstrate a prima facie case of bad faith.

In re Mt. Hawley was the Supreme Court of South Carolina's attempt to answer a question certified by the Fourth Circuit about the waiver of attorney-client privilege in insurance bad-faith litigation. The In re Mt. Hawley court concluded its consideration of

the issue by "adopt[ing] the [State Farm Mut. Auto. Ins. Co. v. Lee, 13 P.3d 1169 (Ariz. 2000)] framework in a tort action against an insurer for bad faith refusal to provide coverage, and [ ] impos[ing] the additional requirement that the party seeking waiver of the attorney-client privilege make a prima facie showing of bad faith." 829 S.E.2d at 717. This court conducted an in-depth analysis of In re Mt. Hawley in ContraVest Inc. v. Mt. Hawley Ins. Co., 2020 WL 1877911 (D.S.C. Jan. 21, 2020), in an attempt to untangle In re Mt. Hawley's adoption of the "Lee framework." In doing so, the court explained that "if an insurer asserts a claim or defense that necessarily includes information learned from counsel, and if the truth cannot be found unless that issue is explored, then implied waiver exists. The sword/shield metaphor is particularly apropos: an insurance company cannot assert a claim or defense while using privilege as a shield to prevent discovery of the truth of the claim or defense." Contravest, 2020 WL 1877911, at *6. The court went on to explain that

> If an insurance company simply asserts that its position is legally correct or that the language of its policy supports its position, privilege will not conceal the truth of either of those arguments. Either the law or the court's interpretation of the policy language will show whether the insurer's position was objectively unreasonable. In these scenarios, the truth as to whether the insurer acted in an objectively reasonable manner can be found without exploring advice provided by the insurer's counsel. To impliedly waive privilege, an insurance company must take one step further and assert that its position and handling of the claim is objectively reasonable in part because the insurance company's legal evaluation of the claim or some other fact that necessarily includes information from counsel.

Id. And importantly, In re Mt. Hawley stated that privilege is not waived solely when a client consults counsel for advice and the client subsequently takes action based on counsel's advice. 829 S.E.2d at 717 (citing State Farm Mut. Auto. Ins. Co. v. Lee, 13 P.3d 1169, 1183 (Ariz. 2000)).

9

Therefore, in order for Associated Industries to waive attorney-client privilege over its communications with outside counsel, two things must be true. First, Associated Industries must assert a defense to Harriman's bad faith claim that necessarily includes information learned from counsel, the truth of which cannot be discovered without exploring communication with counsel. Additionally, Harriman must make a prima facie showing of bad faith. The court finds that Associated Industries has not yet asserted a defense that impliedly waives attorney-client privilege, meaning the attorney-client privilege is still intact and it is unnecessary to address whether Harriman has made a prima facie showing of bad faith.

Harriman contends that "[u]nder South Carolina law, as recently held by the South Carolina Supreme Court, in a bad faith case, where the insurer claims it evaluated the claims reasonably and in good faith, but its evaluation included information and advice received from attorneys, the insurer waived the attorney-client privilege." ECF No. 48 at 6. This argument is based solely on the fact that Associated Industries used outside counsel to make its coverage determination. In re Mt. Hawley makes it clear that this is not enough to waive privilege. See 829 S.E.2d at 717 ("We assume client and counsel will confer in every case, trading information for advice. This does not waive the privilege. We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege. Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses. This does not waive the privilege."). Harriman relies on Graham v. National Union Fire Ins. Co. of Pittsburgh, PA, which held that "[t]o the extent Defendant relied on its attorneys' investigation to determine the claim denials, Defendant has waived attorney-client privilege and must provide the

10

information Defendant relied upon in making its decision to deny the claims." 2017 WL 116798, at *4 (D.S.C. Jan. 12, 2017). However, that case pre-dates In re Mt. Hawley, and the court found that the defendant insurance company implicitly waived attorney-client privilege by asserting that it did not act unreasonably or in bad faith. Id. In re Mt. Hawley clearly holds that such an assertion alone does not implicitly waive attorney-client privilege. 829 S.E.2d at 709 ("[W]e find little authority for the untenable proposition that the mere denial of liability in a pleading constitutes a waiver of the attorney-client privilege."). Therefore, Harriman's reliance on Graham is misplaced.

      Instead, the proper inquiry is how Associated Industries is defending Harriman's bad faith claim and whether the truth of that defense can be discovered without learning what coverage counsel told Associated Industries. Harriman's amended complaint alleges that Associated Industries acted in bad faith by refusing to provide a copy of the applicable policy, i.e., the Endurance Policy, by misrepresenting policy terms, and by refusing to pay for benefits without a reasonable basis and in bad faith. Harriman expands a bit on her claim in her motion, explaining that in the initial denial letter, coverage counsel mentions both the Endurance Policy and the Policy but then limits his coverage conclusion to the Policy. This was problematic, Harriman argues, because the Endurance Policy provides coverage for defamation when the Policy does not. In other words, Harriman alleges that Associated Industries concealed a potential source of coverage from her. Harriman also claims that when she asked for a copy of the applicable policy, Associated Industries only provided a copy of the Policy and did not provide a copy of the Endurance Policy, despite the fact that Associated Industries had the Endurance Policy and knew that it provided coverage for defamation. She points to a

document in her claim file that states that the claims manager talked to coverage counsel, and that the Endurance Policy appears to cover defamation but that it has to be in connection with Professional Services. ECF No. 48-15 at 1.

Associated Industries raised as a defense that it acted reasonably and in good faith at all times during the handling and investigation of Harriman's claims. ECF No. 27 at 9. Associated Industries explained at the hearing on the motion that its defense to the bad faith claim is that it acted objectively reasonably based on the Policy and the Endurance Policy, i.e., that its denial of coverage was objectively reasonable based on the language of the two policies and the pleadings in the underlying suits. The truth of that defense can be discovered without learning what outside counsel told Associated Industries. As this court has previously explained: "If an insurance company simply asserts that its position is legally correct or that the language of its policy supports its position, privilege will not conceal the truth of either of those arguments. Either the law or the court's interpretation of the policy language will show whether the insurer's position was objectively unreasonable." ContraVest Inc., 2020 WL 1877911, at *6. That is exactly the scenario here. As such, the In re Mt. Hawley privilege waiver does not apply at this time.[4]

### B. Privilege Waiver Through Failure to Timely Produce Privilege Log

In Harriman's second argument for privilege waiver, Harriman argues that Associated Industries waived its attorney-client privilege by failing to produce a privilege

---

[4] If Associated Industries's defense morphs from objective reasonableness to a different defense, and the truth of that defense cannot be discovered without examining communication between Associated Industries and coverage counsel, then Harriman may raise this issue again.

log with its original document production and then subsequently producing an incomplete privilege log. Harriman explains that in its privilege log, Associated Industries does not claim privilege over communications between Associated Industries and its counsel prior to the original denial letter or documents in possession of any of attorneys or agents who evaluated coverage for Harriman's claims.

Associated Industries did not produce a privilege log with its original production but did produce one with its supplemental production on November 4, 2019. ECF No. 48-7. Associated Industries does not address the purported deficiencies identified by Harriman but instead argues that a finding of waiver is too harsh of a sanction and that the court should permit Associated Industries to amend its privilege log or conduct an in camera review of the documents if the court finds the privilege log to be inadequate.

The issue here is not whether the privilege log is adequate; instead, the issue is whether the privilege log is complete. To be sure, the privilege log contains the necessary information to be considered adequate. It "identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." AVX Corp. v. Horry Land Co., 2010 WL 4884903, at *3 (D.S.C. Nov. 24, 2010). Harriman argues that Associated Industries failed to include certain documents on the privilege log, not that the privilege log contains insufficient information about the documents listed.

Nevertheless, the court agrees that a finding of waiver is too strong a sanction. "Failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege." Id. at *4. For example, in AVX Corp., the court found that the

13

plaintiff waived privilege because it initially failed to produce a privilege log and when it eventually did, it failed to identify the specific privilege asserted for each document and instead asserted every privilege possible for every document.  2010 WL 4884903, at *3.  The plaintiff also incorrectly identified many of the documents on the privilege log.  However, given the drastic sanction of waiving privilege, some courts instead permit the party to amend its privilege log to correct deficiencies.  See, e.g., Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 538 (D.S.C. 2018).

The court finds that any potential deficiency with Associated Industries's privilege log is not so egregious.  The parties did not mention this issue at the hearing, but if it is still an issue, then the court grants Associated Industries the opportunity to correct any deficiencies in its privilege log.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion without prejudice.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**May 29, 2020**
**Charleston, South Carolina**

14