IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SUSAN HARRIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:18-cv-2750-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| ASSOCIATED INDUSTRIES INSURANCE | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matter is before the court on defendant Associated Industries Insurance Company, Inc's ("Associated Industries") motion for summary judgment, ECF No. 76. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

Susan Harriman ("Harriman") brings this insurance coverage action against Associated Industries related to two lawsuits in Texas. During the relevant time period, Harriman was a Registered Representative and Investment Advisor with IMS Securities, Inc. ("IMS"). In 2015, Harriman was sued in the United States District Court for the Western District of Texas by Palmaz Scientific ("Palmaz"), a medical technology company (the "federal underlying suit"). The complaint in the federal underlying suit alleges that in 2012 Harriman met with the CEO of Palmaz to solicit business on behalf of IMS. ECF No. 15-1 at ¶¶ 33–35. When Palmaz declined her offer, the complaint continues, Harriman became verbally abusive, threatening, and eventually set out on a "delusional and malicious campaign of economic terrorism" designed to sink Palmaz's business. Id. at ¶¶ 37–68. Palmaz specifically alleges, among other things, that Harriman

1

made false and defamatory statements about Palmaz in her capacity as an IMS Registered Representative and Investment Advisor. The district court dismissed that action on jurisdictional grounds. Shortly thereafter, Harriman sued Palmaz in Texas state court, where Palmaz filed counterclaims against Harriman containing the same allegations as those asserted in the federal underlying suit (the "state underlying counterclaims") (together with the federal underlying suit, "the underlying suits").

Harriman was insured under IMS's professional liability insurance policy that was issued by Associated Industries and valid from July 15, 2015 to July 15, 2016 ("the AI Policy"). The AI Policy also incorporates IMS's previous insurance policy through an endorsement. That policy was issued by Endurance Specialty Insurance Co. ("the Endurance Policy"). The parties agree that the language of these two policies is largely the same, save for the inclusion of "Personal and Advertising Injury" as a "Wrongful Act" in the Endurance Policy. Pursuant to the terms of the AI Policy, Associated Industries has a duty to defend any claim against its insured to which the AI Policy applies. ECF No. 15-3 at 15. This duty to defend stems from the occurrence of a "Wrongful Act," which is defined in the AI Policy as

> any actual or alleged negligent act, error, omission, misstatement, misrepresentation or breach of duty by an Insured, or by any person other than an Insured for whose actions the Insured is legally responsible, <u>in rendering or in failing to render Professional Services</u> for clients of the Broker/Dealer.

Id. at 18 (emphasis added).

In addition to her employment with IMS, Harriman owns a consulting business called "3G Partners." Harriman, through 3G Partners, was also insured by a second policy, issued by Travelers Casualty Insurance Company ("Travelers"), for the period of

May 30, 2014 to May 30, 2015 (the "Travelers Policy"). ECF No. 76-5. On October 4, 2017, Harriman tendered defense of the underlying suits to Travelers, who agreed to provide a defense under a reservation of rights on February 28, 2018. In the span of approximately one year, Travelers spent almost $4.2 million defending the claims against Harriman. ECF No. 76-7, Geoghegan Decl.; ECF No. 76-10. In November 2018, Travelers also paid the aggregate limits of its policy, $2 million, to obtain releases of the claims against Harriman and the claims against IMS. ECF No. 76-11. Associated Industries, the evidence indicates, remained unaware that Travelers provided Harriman with a defense in the underlying suits until November 2019, over a year after Harriman filed this suit against it.

In this action, Harriman asserts that because the underlying suits stem from Harriman's actions in her capacity as a Registered Representative and Investment Advisor with IMS, Associated Industries has a duty to defend Harriman pursuant to the AI Policy. Associated Industries has refused to do so. As a result, Harriman filed the instant case on October 9, 2018. Her amended complaint, now the operative complaint, asserts the following claims: (1) breach of contract for Associated Industries' failure to defend Harriman; (2) bad faith for Associated Industries' refusal to defend Harriman; and (3) a declaratory judgment seeking a declaration that Associated Industries owes Harriman a duty to defend and indemnify[1] the underlying suits. ECF No. 15, Amend. Compl.

---

[1] Despite this reference to indemnification in the amended complaint, Harriman has since clarified that this dispute is solely about the duty to defend. See ECF No. 26 at 2 n.1.

On January 1, 2019, Associated Industries filed a motion to dismiss, arguing that it has no duty to defend Harriman because the AI Policy does not extend coverage to the conduct alleged in the underlying suits. ECF No. 17. After analyzing the relevant policy language and underlying allegations against Harriman, the court denied the motion, finding "that the allegations in the underlying suits create the possibility of coverage under the [AI] Policy, which invokes Associated Industries' duty to defend." ECF No. 26 at 7. After nearly two years of discovery, Associated Industries filed a motion for summary judgment on March 8, 2021. ECF No. 76. On March 22, 2021, Harriman responded. ECF No. 78. On March 29, 2021, Associated Industries filed a reply. ECF No. 79. The court held a hearing on the matter on May 10, 2021. Accordingly, this motion is ripe for review.

## II. STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

### III.  DISCUSSION

Associated Industries asserts four grounds for summary judgment. The court addresses the first three grounds in turn and, finding that summary judgment is warranted on the second and third, does not reach the fourth.

### A. Coverage of the Underlying Suits

First, Associated Industries argues that "the allegations of the [underlying suits], even liberally construed, never triggered" its duty to defend. ECF No. 76 at 12. Specifically, Associated Industries contends that the underlying suits do not allege conduct that is covered by the AI Policy because the alleged conduct does not fall within the AI Policy's definition of "Professional Services." The court has already considered and rejected this exact argument in denying Associated Industries' motion to dismiss, and Associated Industries gives the court no reason to reach a different conclusion here. Even after indulging it a second time, Associate Industries' tired argument clearly fails.

Rather than relying on newfound evidence or directing the court to previously unconsidered law, Associated Industries acknowledges the court's earlier holding and urges reconsideration.[2] Associated Industries specifically contends:

> In its Order [denying the motion to dismiss], the Court does not point to any specific allegations in the [underlying suits] as falling within "Professional Services," but hypothesizes that Harriman might have been engaged in such services when she disparaged Palmaz. The Court's speculation about unpled factual scenarios involving "professional services" goes beyond a liberal construction of the pleadings to reverse the parties' burdens of proof.

ECF No. 76 at 14. But the court did not engage in impermissible speculation or reverse burdens of proof in its previous order; it applied well-settled South Carolina law. As the court explained then, "[p]ursuant to South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint." Union Ins. Co. v. Soleil Grp., Inc., 465 F. Supp. 2d 567, 572 (D.S.C. 2006). "[T]he complaint is construed

---

[2] The court would characterize Associated Industries' argument as "that's my story and I'm sticking to it." Associated Industries can squeeze this lemon as much as it likes, but in the end, it's still a lemon.

6

liberally, with all doubts resolved in favor of the insured." Id. "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1994) (emphasis added). Applying this law, the court stated:

> The [AI] Policy generally defines Professional Services as (1) the sale of certain financial products and securities; (2) the administration of certain retirement accounts; (3) the provision of Investment Advisory Services; and (4) professional supervision. Associated Industries argues that a "delusional and malicious campaign of economic terrorism" does not fall within one of these Professional Services. ECF No. 17-1 at 17 (citing Underlying State Counterclaim ¶ 2); see also Underlying Federal Suit Complaint ¶ 3.
>
> Associated Industries again construes the allegations in the underlying suits too narrowly. The underlying state counterclaim alleges that "Harriman's tortious conduct, as described herein, occurred while she was acting in the course and scope of, and in her capacity as, agent for IMS." Underlying State Counterclaim ¶ 123. If Harriman was acting within the scope of her role as an IMS agent, then there is a possibility that Harriman was providing Professional Services. While the underlying federal suit complaint does not contain a similar allegation regarding Harriman acting in the scope of her role as an IMS agent, both of the underlying suits contain allegations, as discussed above, that suggest that Harriman made allegedly defamatory comments to her clients. See, e.g., Underlying State Counterclaim ¶ 73; Underlying Federal Suit Complaint ¶ 63. In doing so, it is possible that Harriman was providing Professional Services to her clients. Therefore, the allegations in the underlying suits create a possibility that Harriman's conduct constitutes a Wrongful Act, invoking Associated Industries' duty to defend Harriman. See Isle of Palms Pest Control[], 459 S.E.2d at 319.

ECF No. 26 at 9–10. Associated Industries' plea for reconsideration does nothing to shake the court's resolve. South Carolina law is clear that an insurer's duty to defend is triggered when allegations against an insured create "a possibility of coverage." Isle of Palms Pest Control, 459 S.E.2d at 319 (emphasis added). The court finds here, as it did once before, that the allegations against Harriman in the underlying suits create such a

possibility of coverage under the insuring language of the AI Policy. Therefore, the court rejects this ground for summary judgment.[3]

**B. Excess Coverage**

Next, Associated Industries argues that it "had no duty to defend Harriman because its coverage was excess to the primary coverage provided to Harriman under her Travelers Policy." ECF No. 76 at 16. On this point, the court agrees with Associated Industries.

In South Carolina, "an insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (S.C. 2008). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co., 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003)). "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." Id. However, an insurance contract which is "in any respect ambiguous or capable of two meanings" must be construed strictly against its drafter, the insurer. Reynolds v. Wabash Life Ins. Co., 161 S.E.2d 168, 169 (S.C. 1968). "A contract is ambiguous when it is capable of more than one meaning when

---

[3] Harriman argues that the court cannot change its earlier finding pursuant to the "law-of-the-case doctrine." ECF No. 78 at 6. Associated Industries responds that the law-of-the-case doctrine applies only to appellate rulings and that the court can reconsider its ruling under Fed. R. Civ. P. 54(b). The court need not consider the law-of-the-case doctrine because Associated Industries gives the court no substantive reason to alter its earlier finding.

viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). The provisions of an insurance contract should be considered within the context of the policy as a whole, "and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. M & M Corp. of S.C. v. Auto–Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010); Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

The AI Policy contains an "other insurance" clause, which provides:

> Other Insurance. This insurance shall be excess over any other valid and collectable insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Policy.

ECF No. 76-1 at 23.  The Travelers Policy also contains an "other insurance" provision. Unlike the AI Policy, though, the Travelers Policy's "other insurance" provision does not render its coverage excess when the insured has another source of coverage:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> a. Primary Insurance: This insurance is primary except when b. below applies.[4]  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below

ECF No. 76-5 at 77 (footnote added).  Harmonizing the language of the two policies, the Travelers Policy provides primary coverage, making the AI Policy coverage "excess" over the Travelers Policy coverage.  Associated Industries argues that because its coverage is excess to Travelers' coverage, its duty to defend Harriman was never triggered.

This court has recently acknowledged that "South Carolina courts have not confronted the question of whether an excess insurer owes a duty to defend." ContraVest Inc. v. Mt. Hawley Ins. Co., 2020 WL 901459, at *5 (D.S.C. Feb. 25, 2020).[5]

---

[4] Section "b" lists instances in which the Travelers Policy coverage is deemed excess.  ECF No. 76-5 at 77.  None of those instances apply here, meaning that the Travelers Policy's coverage is primary.

[5] More than 50 years ago, the South Carolina Supreme Court stated that an excess carrier had a duty to defend its insured when the complaint in the underlying suit alleged damages in excess of the primary carrier's policy limits.  Hartford Acc. & Indem. Co. v. S.C. Ins. Co., 166 S.E.2d 762, 765 (S.C. 1969).  But Hartford is not controlling here because the evolution of South Carolina insurance law has rendered its guidance obsolete.  There, the primary carrier initially assumed the defense of its insured and then withdrew that defense after tendering payment in accordance with its policy limits.  Thereafter, the excess carrier assumed the insured's defense, and, after resolution of the underlying suit, sought to recoup from the primary carrier the costs so incurred.  The Court held that the excess carrier should not be "reimbursed . . . for defending the suit as

"According to Insurance Claims & Disputes, "'[m]ost courts have held that an excess insurer that has a duty to defend is not obligated to provide a defense if the primary insurer is so obligated." Id. (quoting Allan D. Windt, Excess Insurer's Duty to Defend, 1 Insurance Claims and Disputes § 4:11 (6th ed.)). "Indeed, 'since the primary insurer's duty, once activated, encompasses the claims that have been made against the insured regardless of whether they are in excess of the primary insurer's policy limits, the excess insurer's duty to defend does not come into existence.'" Id. "This rule applies when the primary insurer has assumed the defense[.]" Id.

Here, Travelers assumed Harriman's defense in the underlying suits and litigated her cases to settlement, spending $4.2 million in Harriman's defense. Because Travelers had a duty to defend Harriman and assumed Harriman's defense as the primary insurer, Associated Industries, as the excess insurer, has no duty to defend. Harriman does not specifically analyze the relevant language of the Travelers Policy, and she conceded at the hearing that the "other insurance" provisions of the AI and Travelers Policies are not in conflict. Nevertheless, Harriman does point out in her response that, in South Carolina, where two insurers have "mutually repugnant" excess clauses—meaning that

---

to which it alone had the remaining obligation for the payment of any claim within its policy coverage." Id. at 766.

In 1993, the law evolved in a way that would alter Hartford's result. In Nationwide Mut. Ins. Co. v. Simmonds, the South Carolina Supreme Court held that an insurer is not absolved of its duty to defend by tendering payment in accordance with its policy limits. 434 S.E.2d 277, 278 (S.C. 1993). In other words, an insurer's duty to defend in South Carolina is now absolute once it attaches. Accordingly, South Carolina law now affords an insured an absolute right to a defense from its primary insurer, notwithstanding the coverage limits of the policy. Thus, the duty of an excess carrier is no longer triggered by damages alleged in an underlying complaint—even where they are in excess of the primary insurer's coverage limits—because a primary insurer's duty to defend cannot be exhausted.

each policy claims to be excess of the other—"both policies provide primary coverage, and the loss . . . covered by both policies should be prorated between [the insurers] according to their respective policy limits." S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc., 489 S.E.2d 200, 206 (S.C. 1997). While correct on the law, the problem with Harriman's argument is that the policies here are not "mutually repugnant," meaning that the proration law does not apply. As the court explained above, the plain language of the AI Policy states that its coverage "shall be excess" when another policy insures the same risk, ECF No. 76-1 at 23, and the clear language of the Travelers Policy states that its coverage is primary and insures the same risk for which Harriman now seeks coverage, ECF No. 76-5 at 77. And, of course, Travelers actually provided Harriman with a multimillion-dollar defense in the underlying suit pursuant to its primary coverage. Therefore, Associated Industries' duty to defend never came into existence. ContraVest, 2020 WL 901459, at *5.

Alternatively, Harriman argues that the Travelers Policy and the AI Policy are not "concurrent" policies because they cover different policy periods. ECF No. 78 at 8–9. But the fact that the policies have different policy periods is of no moment here. In South Carolina, "concurrent" policies are those that "insure the same interest against the same casualty." Lucas v. Garrett, 41 S.E.2d 212, 214–15 (S.C. 1947). Here, the court has determined that the AI Policy extends excess coverage to the relevant casualty, the underlying suits. Likewise, Travelers has determined that the Travelers Policy covers the underlying suits as well and accordingly provided Harriman with a defense therein, meaning that both policies concurrently insure the same risk. Moreover, the more pertinent inquiry here is whether Travelers had a duty to defend Harriman in the

underlying suits as the primary insurer, not whether the policies are "concurrent." As the court has stated, "[m]ost courts have held that an excess insurer that has a duty to defend is not obligated to provide a defense <u>if the primary insurer is so obligated</u>." ContraVest, 2020 WL 901459, at *5 (emphasis added). In Contravest, the court clarified that "[t]his rule applies when the primary insurer has assumed the defense[.]" Id. Because Travelers was obligated to provide a defense and did in fact provide one, the rule applies.

Finally, Harriman argues that the excess-coverage rule should not apply here because Travelers did not pay all of Harriman's defense costs. According to Harriman, "In the two and a half years until Travelers accepted the claim, [Harriman] incurred more than $1 million in attorneys' fees and costs[.]" ECF No. 78 at 11. But again, the relevant inquiry is whether Travelers was obligated to defend, not the extent to which it provided a defense. ContraVest, 2020 WL 901459, at *5 ("[A]n excess insurer that has a duty to defend is not obligated to provide a defense <u>if the primary insurer is so obligated</u>."). "In South Carolina, an insurer's duty to defend arises 'when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage,' not when the insured tenders proper notice of the underlying suit or explicitly demands a defense thereto." Dudek v. Commonwealth Land Title Ins. Co., 466 F. Supp. 3d 610, 617 (D.S.C. 2020) (quoting Episcopal Church in S.C. v. Church Ins. Co. of Vermont, 53 F. Supp. 3d 816, 828 (D.S.C. 2014)). Travelers, as the primary insurer, was obligated to defend Harriman in the underlying suits as soon as Palmaz filed the complaint in the underlying federal suit. The fact that Travelers did not do so for some time does not change the fact that it was obligated to do so. And because it was obligated to defend Harriman as the primary provider, Associated Industries' duty to defend never

came into existence. For these reasons, the court finds that Associated Industries had no obligation to defend Harriman. Accordingly, Associated Industries is entitled to summary judgment on Harriman's claims for breach of contract and declaratory judgment.

### C. Bad Faith

Next, Associated Industries argues that it is entitled to summary judgment on Harriman's bad faith claim because its "denial of Harriman's claim was at least reasonable." ECF No. 76 at 18. The law in South Carolina is clear that "if there is a reasonable ground for contesting a claim, there is no bad faith." Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455, 462 (S.C. 2004) (quoting Crossley v. State Farm Mut. Auto. Ins. Co., 415 S.E.2d 393, 397 (S.C. 1992)) (internal quotation marks omitted). Based on the above analysis, Associated Industries obviously had reasonable grounds for denying Harriman coverage. The fact that Harriman has presented an expert who disagrees does nothing to alter the court's conclusion. See BMC Distributors of S.C., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 2013 WL 11328259, at *3 (D.S.C. June 13, 2013) ("[A] simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith."). Therefore, the court grants summary judgment with respect to Harriman's bad faith claim.[6] Accordingly, the motion for summary judgment is granted in full.

---

[6] Because the court fully resolves the motion on these grounds, it need not reach Associated Industries' argument concerning damages.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 16, 2021**
**Charleston, South Carolina**