**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| SUSAN HARRIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:18-cv-2750-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| ASSOCIATED INDUSTRIES INSURANCE | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The following matter is before the court on plaintiff Susan Harriman's

("Harriman") motion to alter or amend judgment, ECF No. 89, and motion to certify

question, ECF No. 91.  For the reasons set forth below, the court grants in part and denies

in part the motion to alter or amend judgment, amends its prior order on defendant

Associated Industries Insurance Company, Inc.'s ("Associated Industries") motion for

summary judgment, but finds that summary judgment in is nevertheless appropriate.  The

court denies the motion to certify question.

**I.   BACKGROUND**

Harriman brings this insurance coverage action against Associated Industries

related to two lawsuits in Texas.  During the relevant time period, Harriman was a

Registered Representative and Investment Advisor with IMS Securities, Inc. ("IMS").  In

2015, Harriman was sued in the United States District Court for the Western District of

Texas by Palmaz Scientific ("Palmaz"), a medical technology company (the "federal

underlying suit").  The complaint in the federal underlying suit alleges that in 2012,

Harriman met with the CEO of Palmaz to solicit business on behalf of IMS.  ECF No. 15-

1

1 at ¶¶ 33–35.   When Palmaz declined her offer, the complaint continues, Harriman became verbally abusive, threatening, and eventually set out on a "delusional and malicious campaign of economic terrorism" designed to sink Palmaz's business.  Id. at ¶¶ 3, 36–38.  Palmaz specifically alleges, among other things, that Harriman made false and defamatory statements about Palmaz in her capacity as an IMS Registered Representative and Investment Advisor.  The district court dismissed that action on jurisdictional grounds.  Shortly thereafter, Harriman sued Palmaz in Texas state court, and Palmaz filed counterclaims against Harriman containing the same allegations as those asserted in the federal underlying suit (the "state underlying counterclaims") (together with the federal underlying suit, "the underlying suits").

Harriman was insured under IMS's professional liability insurance policy that was issued by Associated Industries and valid from July 15, 2015 to July 15, 2016 ("the AI Policy").  The AI Policy also incorporates via an endorsement IMS's previous insurance policy that was issued by Endurance Specialty Insurance Co. ("the Endurance Policy"). The parties agree that the language of these two policies is largely the same, save for the inclusion of a provision on "Personal and Advertising Injury" as a "Wrongful Act" in the Endurance Policy.  Pursuant to the terms of the AI Policy, Associated Industries has a duty to defend any claim against its insured to which the AI Policy applies.  ECF No. 15-3 at 15.  This duty to defend stems from the occurrence of a "Wrongful Act," which is defined in the AI Policy as

> any actual or alleged negligent act, error, omission, misstatement, misrepresentation or breach of duty by an Insured, or by any person other than an Insured for whose actions the Insured is legally responsible, in rendering or in failing to render Professional Services for clients of the Broker/Dealer.

<u>Id.</u> at 18 (emphasis added).

In addition to her employment with IMS, Harriman owns a consulting business called "3G Partners." Harriman, through 3G Partners, was also insured by a second policy, issued by Travelers Casualty Insurance Company ("Travelers"), for the period of May 30, 2014 to May 30, 2015 (the "Travelers Policy"). ECF No. 76-5. On October 4, 2017, Harriman tendered defense of the underlying suits to Travelers, who agreed to provide a defense under a reservation of rights on February 28, 2018. In the span of approximately one year, Travelers spent almost $4.2 million defending the claims against Harriman. ECF No. 76-7, Geoghegan Decl.; ECF No. 76-10. In November 2018, Travelers also paid the aggregate limits of its policy, $2 million, to obtain releases of the claims against Harriman and the claims against IMS. ECF No. 76-11. Associated Industries, the evidence indicates, remained unaware that Travelers had provided Harriman with a defense in the underlying suits until November 2019, over a year after Harriman filed this suit against it.

Harriman asserted that because the underlying suits stem from Harriman's actions in her capacity as a Registered Representative and Investment Advisor with IMS, Associated Industries had a duty to defend Harriman pursuant to the AI Policy. Since Associated Industries refused to do so, Harriman filed the instant action on October 9, 2018. ECF No. 1, Compl. She filed an amended complaint, now the operative complaint, on December 17, 2018, asserting the following claims: (1) breach of contract for Associated Industries' failure to defend Harriman; (2) bad faith for Associated Industries' refusal to defend Harriman; and (3) a declaratory judgment seeking a

declaration that Associated Industries owes Harriman a duty to defend and indemnify the underlying suits.  ECF No. 15, Amend. Compl.

On June 16, 2021, the court granted Associated Industries' motion for summary judgment.  ECF No. 86.  On July 14, 2021, Harriman filed a motion to alter or amend judgment.  ECF No. 89.  On July 27, 2021, Associated Industries responded in opposition.  ECF No. 92.  Harriman did not file a reply, and the time to do so has now expired.  On July 15, 2021, Harriman filed a separate motion to certify question.  ECF No. 91.  On July 27, 2021, Associated Industries responded in opposition.  ECF No. 93. Harriman did not file a reply, and the time to do so has now expired.  As such, both motions are now ripe for the court's review.

## II.  STANDARD

### A.  Motion to Alter or Amend Judgment

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a court may "alter or amend [a] judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or manifest injustice."  Robinson v. Wix Filtration Corp., 599 F.3d 403, 407 (4th Cir. 2010) (citation omitted).  It is the moving party's burden to establish one of these three grounds in order to obtain relief under Rule 59(e).  See Loren Data Corp. v. GXS, Inc., 501 F. App'x 275, 285 (4th Cir. 2012).

Clear error occurs when the reviewing court "is left with the definite and firm conviction that a mistake has been committed."  United States v. Harvey, 532 F.3d 326, 336 (4th Cir. 2008) (internal quotation marks omitted); see also United States v. Martinez-Melgar, 591 F.3d 733, 738 (4th Cir. 2010) ("[C]lear error occurs when a district

4

court's factual findings are against the clear weight of the evidence considered as a whole.") (internal quotation marks omitted); <u>Miller v. Mercy Hosp., Inc.</u>, 720 F.2d 356, 361 n.5 (4th Cir. 1983) (explaining that a district court's factual finding is clearly erroneous if "the finding is against the great preponderance of the evidence") (internal quotation marks omitted). Manifest injustice occurs where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." <u>Campero USA Corp. v. ADS Foodservice, LLC</u>, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (citations omitted).

Ultimately, the decision whether to alter an order resulting in judgment pursuant to Rule 59(e) is within the discretion of the district court. <u>See</u> <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1382 (4th Cir. 1995). Furthermore, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." <u>Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Rule 59(e) motions 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" <u>Melendez v. Sebelius</u>, 611 F. App'x 762, 764 (4th Cir. 2015) (quoting <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 486 n.5 (2008)).

### B. Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### C.  Motion to Certify

Rule 244(a) of the South Carolina Appellate Court Rules provides the standard and procedure for certifying a question to the Supreme Court of South Carolina:

> The Supreme Court in its discretion may answer questions of law certified to it by any federal court of the United States . . . when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

S.C. App. Ct. R. 244(a).  Federal courts "may avail themselves of state certification procedures" when a case involves "unsettled questions of state law."  Arizonans for Off. Eng. v. Arizona, 520 U.S. 43, 79 (1997); Lehman Bros. v. Schein, 416 U.S. 386, 394 (1974) (Rehnquist, J., concurring) ("State certification procedures are a very desirable means by which a federal court may ascertain an undecided point of state law . . . .").

6

However, certification "is not a procedure by which federal courts may abdicate their responsibility to decide a legal issue when the relevant sources of state law available to it provide a discernible path for the court to follow." Tidier v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C. Cir. 1988) (citations omitted). "[F]ederal courts should take care not to burden their state counterparts with unnecessary certification requests." Boyter v. Comm'r of Internal Revenue Serv., 668 F.2d 1382, 1385 n.5 (4th Cir. 1981).

## III.   DISCUSSION

Harriman first moves for the court to alter or amend its summary judgment order pursuant to Federal Rule of Civil Procedure 59(e). In its summary judgment order, the court determined that Associated Industries had raised two proper grounds for granting summary judgment. First, the court determined that the AI Policy was excess to the Travelers Policy when the "other insurance" clauses in both policies were viewed together, and Associated Industries thereby had no duty to defend. Second, the court determined that Harriman had failed to demonstrate that Associated Industries acted in bad faith in denying Harriman's claim. In her motion to amend, Harriman argues that the court clearly erred in reaching its holdings. In the alternative, Harriman moves for the court to certify a question to the South Carolina State Supreme Court regarding whether the insurance policies were concurrent. The court considers each motion in turn, ultimately finding that neither alteration of the order nor certification is warranted.

### A.  Motion to Alter

"An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (2008). "The cardinal rule of

7

contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cnty. Sch. Dist. v. United Nat'l Ins. Co., 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (2003)). "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." Id. (citing Schulmeyer, 579 S.E.2d at 134). However, an insurance contract which is "in any respect ambiguous or capable of two meanings" must be construed strictly against its drafter, the insurer. Reynolds v. Wabash Life Ins. Co., 161 S.E.2d 168, 169 (1968). The provisions of an insurance contract should be considered within the context of the policy as a whole, "and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phx. Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976).

In its summary judgment order, the court found that Travelers was a primary insurer under the plain terms of the Travelers Policy while Associated Industries was an excess insurer, based on the plain terms of the AI Policy's "other insurance" clause, along with Travelers' assumption of the duty to defend.

In the motion to alter or amend judgment, Harriman argues that the court erred in applying the AI Policy's "other insurance" clause in three ways: (1) the court failed to recognize that the policies are not concurrent, (2) the court applied an unreasonably broad construction of "other insurance," and (3) even if the policies were concurrent, the court erred in applying prior caselaw that found no duty to defend. Additionally, Harriman argues that the court erred in reaching its second holding, that Associated Industries had a

reasonable ground for denying coverage.  The court addresses each of Harriman's arguments in turn.

### 1. Whether the Policies are Concurrent

"Because multiple insurance policies may cover a given loss, liability insurance policies generally contain 'other insurance' clauses that attempt to define the insurer's responsibility for payment when other insurance coverage is available."  Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 330 (4th Cir. 2008).  The most common kind of "other insurance" clause is the "excess" clause, which "provides that a policy will cover only amounts exceeding the policy limits of other insurance covering the same risk to the same property."  S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc., 489 S.E.2d 200, 204 (S.C. 1997) (hereinafter, "Fidelity").  "When two policies both contain 'excess' clauses, most courts have regarded the clauses as mutually repugnant and have treated both policies as primary, ordering proration of the loss."  Id. (citations omitted).  Acknowledging this rule, the court determined in its summary judgment order that the AI Policy and Travelers Policy were not mutually repugnant because the Travelers Policy provided primary coverage, rather than excess coverage.  Specifically, the Travelers Policy contained an "other insurance" clause that provided:

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance
This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

ECF No. 76-5 at 77. As the summary judgment order observed, subsection "b" lists instances in which the Travelers Policy is deemed excess, but none of those instances apply here, meaning that the Travelers Policy provides primary coverage as it relates to the insurance claims at issue. ECF No. 86 at 10 n.4. As the court further observed, the AI Policy did not contain a similar provision describing when its coverage would be primary. Instead, the AI Policy stated it "shall be excess over any other valid and collectable insurance available to the Insured . . . unless such other insurance is written only as specific excess insurance over . . . this Policy." ECF No. 76-1 at 23.

In her motion, Harriman argues that the court erroneously held that the insurance policies were concurrent when they were not. Specifically, Harriman argues that the court failed to recognize that the policies cover different policy periods, different entities, and different risks. The court acknowledges that in its summary judgment order, it applied one definition of "concurrent" policies in lieu of the one Harriman now asks the court to apply. Specifically, the court stated in the order that concurrent policies are those that "insure the same interest against the same casualty." ECF No. 86 at 12 (quoting Lucas v. Garrett, 41 S.E.2d 212, 214–15 (S.C. 1947)). Harriman argues that in Fidelity, a more recent case, the South Carolina Supreme Court suggested—but left unclear[1]—that concurrent policies must provide coverage over the same policy period as well. For purposes of Harriman's motion to alter or amend judgment, the court presumes that the South Carolina Supreme Court intended to find that concurrent policies must cover the same risk over the same policy period. In arguing that the policies covered

---

[1] This alleged ambiguity is the subject of Harriman's motion to certify question, and the court will more thoroughly discuss the issue in its analysis therein.

different entities, risks, and time periods, Harriman notes that the AI Policy insured IMS while the Travelers Policy insured 3G Partners. Further, the Travelers Policy specifically excluded coverage for "Financial Professional Services" and for the conduct of any business of which Harriman was not the sole owner. ECF No. 89 at 2. Finally, Harriman accurately notes that the policies do not overlap, as the AI Policy provided coverage from July 15, 2015 to July 15, 2016, while the Travelers Policy extended from May 30, 2014 to May 30, 2015.

These facts—including the fact that the policy periods did not overlap—do not alter the court's ruling. First, the coverages at issue in this matter relate to each insurer's coverage of the underlying suits. South Carolina courts have uniformly held that an insurer is obligated to provide a full defense to the insured, even if the insurer's policies only cover a portion of the claims raised in the complaint. Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1994) ("[I]nclusion of some non-covered claims does not abrogate an insurer's duty to defend when a complaint raises claims covered by the policy."); Sloan Constr. Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, 236 S.E.2d 818, 820 (S.C. 1977) ("[T]he duty to defend exists regardless of the insurer's ultimate liability to the insured."). Even though the Travelers Policy excluded coverage for financial professional services, Travelers itself acknowledged in its acceptance of Harriman's tender that it owed a duty to defend the insured against any suit seeking damages for personal or advertising injury. See ECF No. 76-9 at 4. In evaluating the rule in Fidelity, then, the relevance lies in whether the policies "provide protection to [Harriman's] business interests (either directly or incidentally)" and whether they "were in effect during the period of occurrence." See S.C. Farm Bureau Mut. Ins.

Co. v. S.E.C.U.R.E. Underwriters Risk Retention Grp., 554 S.E.2d 870, 876 (S.C. Ct. App. 2001), rev'd on other grounds,[2] 578 S.E.2d 8 (S.C. 2003) (emphasis added).  While the terms of their policies may not have overlapped, the AI Policy and Travelers Policy both either directly covered Harriman or did so incidentally vis-à-vis her business and were in effect during the period of occurrence.

More importantly, when the court determined "that the policies have different policy periods is of no moment here," ECF No. 86 at 12, its ruling was not solely premised on the absence of the "same policy period" requirement in Lucas.  Rather, as the court stated, the more pertinent inquiry was whether, under the plain terms of the insurance policies, Travelers was a primary insurer such that when it assumed the defense, it did so to the exclusion of Associated Industries.  "Generally speaking, in cases where the other-insurance clauses can be reconciled, the clauses will be enforced in accordance with their terms."  Horace Mann, 514 F.3d at 331.  Here, under the plain terms of the policies, the Travelers Policy "is primary" unless otherwise specified, ECF No. 76-5 at 77, and the AI Policy "shall be excess over any other valid and collectable insurance available to the Insured," ECF No. 76-1 at 23.  Moreover, Travelers assumed the defense.  Even if the policies were not technically concurrent under Fidelity, Associated Industries' duty to defend was negated by the fact that Travelers "actually provided Harriman with a multimillion-dollar defense in the underlying suit."  ECF No. 86 at 12.  As the court further explained in both its summary judgment order and in ContraVest Inc. v. Mt. Hawley Insurance Co., 2020 WL 901459 (D.S.C. Feb. 25, 2020),

_____

[2] See S.C. Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E. Underwriters Risk Retention Grp., 578 S.E.2d at 9 n.1 ("[T]he Court of Appeals' decision that the policies provided concurrent coverage is the law of the case.").

South Carolina courts do not appear to have weighed in on whether the excess insurer

owes any duty when the primary insurer has undertaken defense of an action,[3] but the

prevailing view is that "since the primary insurer's duty, once activated, encompasses the

claims that have been made against the insured regardless of whether they are in excess

of the primary insurer's policy limits, the excess insurer's duty to defend does not come

into existence."  Allan D. Windt, 1 Insurance Claims & Disputes § 4:11 (2021).  "The

foregoing rule with respect to the excess insurer's responsibilities assumes that the

primary insurer has, in fact, assumed the defense."  Id.  Travelers assumed the defense

and its coverage was primary; as such, Associated Industries' duty to defend never came

into existence.

        Harriman argues that Travelers simply "chose the safest path" in assuming

Harriman's defense but that its agreement to provide a defense does not relieve

Associated Industries of liability.  ECF No. 89 at 3.  Certainly, such an argument has a

basis in law.  See Allan D. Windt, 1 Insurance Claims & Disputes § 4:11 (summarizing

caselaw that found "[o]nce an insurer assumes the defense of the insured pursuant to its

duty to defend, other insurers that provide coverage and have a duty to defend should

ordinarily no longer be obligated to provide a defense to the insured . . . [but] the

defending insurer, by virtue of having satisfied the contractual obligations of another

insurer," may later be entitled to contribution).  The difference here, however, is that

based on the court's analysis above, Associated Industries' duty to defend never even

---

        [3] Harriman did not seek certification of this issue to the state Supreme Court, and
the court may "predict how the state's highest court would rule on an unsettled issue."
Horace Mann, 514 F.3d at 329 (internal quotation marks and citation omitted).

came into existence.  Therefore, the AI Policy was never implicated and there is no existing policy under which Travelers could seek contribution.

Finally, Harriman argues that the court erred because it mistakenly concluded that the pertinent inquiry was whether Travelers had a duty to defend as the primary insurer. Instead, Harriman argues, the court should have looked "at the 'total insuring intent' of the Policies as required by South Carolina law"[4] to determine that Associated Industries was the primary insurer.  ECF No. 89 at 3.  According to Harriman, had the court looked to evidence of the total insuring intent—for example, the premiums paid under each policy—the court would have determined that Associated Industries intended to provide primary coverage.  Harriman cites Fidelity's holding that in determining whether a policy should be treated as an excess policy, courts in South Carolina should consider the total insuring intent.  But Harriman's argument has been flatly rejected by the South Carolina Supreme Court.  In S.E.C.U.R.E., the Supreme Court observed that in Fidelity, it was presented with a situation where there were two excess insurance clauses.  578 S.E.2d at 10 (citing Fidelity, 489 S.E.2d at 204).  "According to Fidelity, the 'total policy insuring intent' rule applies when a court is required to determine liability among insurers when there are competing insurance clauses."  Id. at 10–11 (emphasis in original).  However, in S.E.C.U.R.E., the court was presented with a different scenario: under the plain language of the policies at issue, one insurer's coverage was primary while the other insurance was excess.  Id. at 11.  As a result, the South Carolina Supreme Court held that the "Court of Appeals [had] erred by applying the 'total policy insurance intent' rule."  Id.  As this

---

[4] Although the AI Policy was issued in Texas and the underlying suits were defended in Texas, the parties previously stipulated that the issues in this case are governed by South Carolina law.  ECF No. 25; ECF No. 76 at 20 n.12.

court has discussed, it has similarly determined that Travelers provided primary coverage while the AI Policy was excess. The law is clear, then, that the court may not apply the total policy insuring rule. In sum, the court is not left with a definite or firm conviction that South Carolina courts would disregard the plain terms of the policies and Travelers' assumption of the defense in favor of the determination that the Travelers Policy was not concurrent with the AI Policy. The court thus finds that it was not clear error or manifest injustice to grant summary judgment in favor of Associated Industries.

### 2.  Scope of the "Other Insurance" Provision

Next, Harriman argues that the court "mistakenly broadened the applicability of the 'other insurance' clause to cases where the primary carrier refused to defend." ECF No. 89 at 4. Citing a case analyzing Illinois law, Harriman argues that the court should not have given any weight to Associated Industries' excess insurance provision because such a provision does not apply if the primary insurer refused to defend. Id. (citing Rhone-Poulenc, Inc. v. Int'l Ins. Co., 1996 WL 328011, at *13 (N.D. Ill. June 11, 1996)). But Travelers did not refuse to defend. Travelers litigated Harriman's cases to settlement and expended $6.2 million to defend Harriman and settle the underlying suits. Harriman avers that Travelers did not fully defend Harriman because it declined to pay any defense costs incurred by Harriman prior to tendering the claim to Travelers, and it refused to reimburse or pursue affirmative claims that Harriman had sought to bring.

Harriman's argument has already been considered and rejected by this court. See ECF No. 86 at 13 ("Harriman argues that the excess-coverage rule should not apply here because Travelers did not pay all of Harriman's defense costs."). Beyond that, Harriman's appeal to Rhone-Poulenc fails to recognize that "[i]n South Carolina, a duty

to defend arises 'when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage,' not when the insured tenders proper notice of the underlying suit or explicitly demands a defense thereto." Koppers Perf. Chems., Inc. v. The Travelers Indem. Co., 2022 WL 542468, at *6 (D.S.C. Feb. 23, 2022) (citation omitted).  Harriman argues that the cases cited in the court's summary judgment order for this proposition are distinguishable because in each of those cases, the court determined, on other grounds, that there was no duty to defend. ECF No. 89 at 5 (citing Dudek v. Commonwealth Land Title Ins. Co., 466 F. Supp. 3d 610, 617 (D.S.C. 2020) and Episcopal Church in S.C. v. Church Ins. Co. of Vt., 53 F. Supp. 3d 816, 828 (D.S.C. Sept. 14, 2014)).  Harriman may be correct regarding Dudek, but she is incorrect regarding Episcopal Church.  In the latter case, the court applied the rule that an insurer owes a duty to defend if the underlying suit is arguably within the scope of coverage and found that the insurer owed a "duty to reimburse Plaintiff for the reasonable costs of defense of the Underlying Action incurred both before and after Plaintiff tendered notice of the suit." Episcopal Church, 53 F. Supp. 3d at 828–830.  It only denied summary judgment as to whether the insurer owed a duty to defend and pay the costs of the plaintiff's counterclaims. Id. at 827.  In any event, other courts have applied the rule and proceeded to find that the insurer owed a duty to defend and could not avoid reasonable costs of defense from before the plaintiff tendered notice of the suit.[5] See Koppers, 2022 WL 542468, at *7 (denying insurer's motion for summary

_____

[5] In drawing upon these cases, the court issues no ruling on whether Travelers must reimburse Harriman because Travelers is not a party to this action, and such a determination rests upon a litany of other issues that are beyond the scope of the court's purview.

judgment seeking to deny recovery for fees incurred before the date the plaintiff tendered notice). Since the court properly determined that Travelers did not refuse to defend Harriman in the underlying actions, the court did not commit clear error or manifest injustice by finding that the AI Policy's "other insurance" provision had been triggered.

### 3. Application of <u>ContraVest</u>

Alternatively, Harriman argues that even if the policies were concurrent, the court erred in its application of <u>ContraVest</u> when it determined that because Travelers had a duty to defend and assumed Harriman's defense, Associated Industries' duty to defend never came into existence.[6] In support, Harriman claims that the policies in the instant action contain different language from the policies at issue in <u>ContraVest</u>. Specifically, Harriman points out that in <u>ContraVest</u>, the excess insurer's policy contained a provision stating that if its policy was in excess, it "shall not be obligated to . . . participate in the settlement or defense of any . . . suit brought" against the insured. ECF No. 89 at 6 (quoting <u>ContraVest</u>, 2020 WL 901459, at *5). Harriman properly observes that the AI Policy did not contain such a provision. But this factual difference is not outcome determinative. To be sure, where an insurance provision is ambiguous, it should be liberally construed in favor of coverage. <u>M & M Corp. of S.C. v. Auto-Owners Ins. Co.</u>, 701 S.E.2d 33, 35 (S.C. 2010). But the AI Policy's "other insurance" provision is not ambiguous. It provides that "This insurance shall be excess over any other valid and collectable insurance available to the Insured." ECF No. 76-1 at 23. Even though Associated Industries did not specify that it was permitted to deny a duty to defend, the

---

[6] As a clarifying point, the court notes that for reasons discussed above, the court's ruling is not premised on a legal determination that the policies were concurrent.

17

"other insurance" provision plainly applies to all instances where the AI Policy abuts another valid insurance policy, including in the duty to defend. Accordingly, the court finds it was not clear error to reference <u>ContraVest</u>'s holding that a primary insurer's duty to defend, once activated, encompasses the claims, and the excess insurer's duty to defend does not come into existence.

### 4. Bad Faith

In addition to granting summary judgment in favor of Associated Industries on Harriman's breach of contract and declaratory judgment cause of actions, the court also granted summary judgment in favor of Associated Industries on Harriman's bad faith claim. The court reasoned that "[b]ased on the above analysis"—referring to the discussion of Associated Industries' role as excess insurer—"Associated Industries obviously had reasonable grounds for denying coverage." ECF No. 86 at 14. Harriman moves for the court to alter its judgment and find that it erred in granting summary judgment in Associated Industries' favor. Upon consideration, the court finds that it erred in granting summary judgment based on consideration of the AI Policy's "other insurance" provision and amends its prior order to that effect. However, the court finds that for alternative reasons, summary judgment in Associated Industries' favor is nonetheless appropriate.

Harriman argues in her motion that even assuming Associated Industries was an excess insurer, it did not have any knowledge at the time it denied the claim that Travelers would provide coverage for the underlying suits. On this point, the court agrees. Associated Industries denied Harriman's claim on November 24, 2015. ECF No.

18

76-3.  Travelers did not accept Harriman's tender of defense until February 28, 2018.

ECF No. 76-9.

"Whether an insurance company is liable for bad faith must be judged by the evidence before it at the time it denied the claim . . . ."  Howard v. State Farm Mut. Auto Ins. Co., 450 S.E.2d 582, 584 (S.C. 1994) (citation omitted).  "Evidence that arises after the denial of the [insurance] claim is not relevant to the propriety of the conduct of the insurer at the time of its refusal."  Id.  Since Associated Industries denied Harriman's claim before it learned that Travelers assumed the duty to defend, Associated Industries may not rely on the uncertainty of whether it was an excess insurer to argue that its denial was reasonable.  For the same reason, the court finds it clear error and manifest injustice to premise summary judgment on that basis.

Nevertheless, the court finds that summary judgment in favor of Associated Industries is warranted on other grounds raised.  The elements of bad faith refusal to pay are: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured."  Crossley v. State Farm Bureau Cas. Ins. Co., 415 S.E.2d 393, 396–97 (S.C. 1992) (citation omitted).  "If there is a reasonable ground for contesting a claim, there is no bad faith."  Id. at 397.  "When conflicting evidence is presented, summary judgment on the issue of bad faith is generally inappropriate; however, a court may grant summary judgment on this issue if, viewing the evidence in the light most favorable to the plaintiff,

no reasonable finder of fact could have found for the plaintiff on her bad faith claim." Id. (citation omitted).

Associated Industries argued that Harriman has presented no evidence of consequential damages, and to the extent the court did not consider the argument in its initial consideration of the motion for summary judgment, the court finds it pertinent here. In advancing this argument, Associated Industries suggested that Harriman's bad faith claim must fail if the court determines that its duty to defend was never triggered. See ECF No. 79 at 8 ("If the Court determines that Associated's duty to defend was never triggered, Harriman's bad faith claims fail because she has adduced no evidence of consequential damages independent of her claim for policy benefits."). The court disagrees with Associated Industries' premise for making the argument: breach of a contractual provision is not a prerequisite to bringing a bad faith claim. Tadlock Painting Co. v. Md. Cas. Co., 473 S.E.2d 52, 55 (S.C. 1996). However, the court agrees with Associated Industries' legal conclusion. An insured may bring a "cause of action for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third party claims." Id. (emphasis added); see also Brown v. S.C. Ins. Co., 324 S.E.2d 641, 647 (S.C. 1984), overruled on other grounds by Charleston Cnty. Sch. Dist. v. State Budget & Control Bd., 437 S.E.2d 6 (S.C. 1993) (citing Kline Iron & Steel Co. v. Superior Trucking Co., 201 S.E.2d 388 (1973)) ("As with special damages in any contract action, the plaintiff must specially plead and prove consequential losses flowing from breach of the implied covenant of good faith and fair dealing."). For example, in Tadlock, the insured brought a bad faith action against its insurer and

claimed consequential damages of lost future business.  <u>Tadlock</u>, 473 S.E.2d at 53.  The insured, Tadlock, was painting at a client's job site when wind carried spray paint onto the client's employees' cars.  When Tadlock notified its insurer of its client's claims, a dispute arose over the deductible and delayed resolution of the issue, including the cleaning of the client's employees' cars.  Tadlock eventually settled the claims for an amount less than its deductible and brought a bad faith claim against its insurer, claiming damages because its client would no longer do business with the insured due to the delay in cleaning its employees' cars caused by the insurer's bad faith.  The Supreme Court of South Carolina held that the law permitted Tadlock to recover those damages as consequential damages arising from the insurer's bad faith.  <u>Id.</u> at 55.

Despite agreeing with the principle that to bring a bad faith claim, one must assert consequential damages, <u>see</u> ECF No. 78 at 17, Harriman failed to specify what her consequential damages are.  Instead, Harriman reiterated that an insured may bring a bad faith action absent a breach of an express contractual provision and argued that Associated Industries acted in bad faith by acting independently of its retained attorney and concealing the existence of the Endurance Policy.  Harriman provided no evidence of any resulting damages and failed to otherwise explain her theory of damages.  While Harriman argues that she is entitled to the attorney's fees that she incurred in defending herself, those damages are similarly alleged to be owed directly under the terms of the AI Policy.  Unlike in <u>Tadlock</u>, Harriman failed to assert any damages that flow from the failure to provider her benefits she was purportedly owed as set out by contract.  On this basis, the court grants summary judgment in Associated Industries' favor.

### B.  Motion to Certify

Harriman moves, in the alternative, for an order from the court certifying the

following question to the South Carolina Supreme Court:

> Does a professional liability policy that provides coverage to agents of IMS Securities Inc., for claims made for defamation (arising out wrongful acts committed in the rendering or failing to render professional services on behalf of IMS Securities Inc.) during the period July 15, 2015 to July 14, 2016, afford concurrent coverage with a general liability policy that provides coverage to agents of 3G Partners, for occurrences of defamation (but excludes coverage for professional liability), for the period May 14, 2014 to May 15, 2015, so as to give effect to the priority of coverage in the other insurance clauses of the polices?

ECF No. 91 at 1.

According to Harriman's motion to certify, the court in Fidelity appeared to

provide two different sets of requirements for determining when policies provide

concurrent coverage and should thus be prorated.  First, the court indicated that "other

insurance" clauses, including "excess" clauses, are intended to apply when the policies

"offer coverage of the same risk and same interest for the benefit of the same insured for

the same period."   Fidelity, 489 S.E.2d at 202 (emphasis added).  Later, the court stated

that "[p]rior South Carolina precedents suggest that if two or more policies insure the

same entity against the same risk to the same object, the policies are concurrent."  Id. at

203 (citing Lucas, 41 S.E.2d at 212).  Notably, the latter "definition" did not include a

requirement that the policies be for the same period.  Due to the discrepancy, Harriman

argues that the court is unable to reach a ruling on whether the AI Policy and Travelers

Policy were concurrent absent clarification from the South Carolina Supreme Court.

The court finds that certification is unnecessary and, therefore, Harriman's request

must be denied.  Certification is only available when the question of law is

"determinative of the cause then pending in the certifying court."  S.C. App. Ct. Rule

244; see also Henry v. Gov't Emps. Ins. Co., 275 F. Supp. 3d 750, 755 (D.S.C. 2017) (denying certification because the proposed question was "not outcome determinative" and because the defendant was still entitled to summary judgment). As the court discussed in both its summary judgment order and in its analysis above, the pertinent inquiry is whether Associated Industries had a duty to defend Harriman in the underlying suits as the primary insurer, not whether the policies are concurrent. In other words, even if the Supreme Court of South Carolina answered Harriman's proposed question in the negative, that the policies are not concurrent, the plain terms of the Travelers Policy— read together with the AI Policy—would not support a finding that Associated Industries owed Harriman a duty to defend and indemnify. If the Travelers Policy required Travelers to defend even a portion of Harriman's claims in the underlying suits, then under the law, Travelers had a duty to defend Harriman completely. As a result, Travelers became the primary insurer under the terms of its policy. Once it assumed that defense, the prevailing law indicates that Associated Industries, as an excess insurer, was not obligated to provide a defense.[7] Therefore, the court finds that it can determine that the summary judgment order did not commit clear error or manifest injustice without regard for whether concurrent insurance policies must cover the same policy periods. Accordingly, the court finds certification on this issue to be unnecessary and grants summary judgment.

---

[7] As the court acknowledged earlier, South Carolina courts have not fully resolved this issue, but Harriman did not seek certification on this question. While the decision to certify a question of law to the highest court of the state may be made sua sponte, Brunty v. NationsBanc Mortg. Corp., 955 F. Supp. 47, 48 n.3 (D.S.C. 1997) (citations omitted), the court finds that the available law provides a discernible path for the court to follow.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion to alter or amend judgment and **DENIES** the motion to certify.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 17, 2022**
**Charleston, South Carolina**